UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COUNCIL ON AMERICAN-ISLAMIC RELATIONS-WASHINGTON,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES CUSTOMS AND BORDER PROTECTION, UNITED STATES DEPARTMENT OF HOMELAND SECURITY,<br><br>Defendants. | Case No. C20-217RSM<br><br>ORDER RE: MOTIONS FOR SUMMARY JUDGMENT |

## I.     INTRODUCTION

This Freedom of Information Act ("FOIA") matter comes before the Court on cross-motions for summary judgment by Defendant United States Customs and Border Protection ("CBP") and Plaintiff Council on American-Islamic Relations Washington ("CAIR").   Dkts. #20 and #23.  The Court has determined that oral argument is unnecessary.  For the following reasons, the Court DENIES Defendant's Motion and GRANTS IN PART Plaintiff's Motion.

## II.     BACKGROUND

In early January 2020, CBP's Tactical Analytical Unit Seattle Field Office issued a "high alert" stating "Iranian Supreme Leaders Vows Forceful Revenge after US Kills Maj.

ORDER RE: SUMMARY JUDGMENT - 1

General Qassim Suleimani" and directing that "all persons (males and females) born after 1961 and born before 2001 with links (POB, travel, Citizenship)" to Palestine, Lebanon, or Iran were to be vetted with extra questioning on their entry to the United States from British Columbia, Canada. *See* Dkt. 16-7. Reporting has indicated that On January 4 and 5, U.S. citizens and lawful permanent residents ("LPRs") of Iranian background were detained, questioned and held for hours—including with their small children or throughout most of the night—at the Port of Entry in Blaine, Washington. Dkt. #24 ("Maltese Decl."), Ex A (CBP FOIA production) at 84 (detailing vetting to conduct of "Iranian National[s]"); *id*. Exs. B-H (news articles). These facts are not in dispute.

On or about January 8, 2020, Plaintiff submitted to CBP the following FOIA request:

> Please provide records of all directives, orders, guidance, briefings, instructions, musters, e-mail, other electronic communications or any other communications, whether issued verbally or in writing, issued by the Seattle Field Office Director *or any other* Department of Homeland Security (DHS) or Customs and Border Protection (CBP) official, officer, or employee to *any* CBP officer, port director, or CBP Seattle Field Officer or Blaine Sector or Blaine Port of Entry employee regarding the screening of individuals of Iranian heritage or any other changes in screening or secondary inspection procedures between January 1, 2020, and January 8, 2020, including, but not limited to, any changes based on the 'current threat environment,' or the need for 'enhanced vigilance,' 'additional caution,' or an 'enhanced posture.'

> In addition, please provide records of any directives, orders, guidance, briefings, instructions, e-mails, other electronic communications or any other communications, whether issued verbally or in writing, sent by DHS or CBP headquarters to the Seattle Field Office or the Blaine Sector of CBP in response to the reports of secondary screenings, vetting, detention, or denial of entry or exit of individuals of Iranian heritage at the Blaine Port of entry, issued between January 3, 2020 and January 8, 2020.

> Finally, please also provide records of any statements provided to any press or media outlet regarding the secondary inspection and

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

> enhanced vetting of individuals of Iranian heritage at the Blaine
> Port of Entry on January 3 and 4 from the Relevant Time Period….

Dkt. #21-1 (emphasis in original). The CBP FOIA Division received CAIR's FOIA request and assigned the request a tracking number on or about the same day. Dkt. #21 ("Search Decl."), ¶ 19.

After Defendants failed to respond to the request within the statutory timeframe, CAIR filed the instant action on February 12, 2020. Dkt. #1.

On April 14, 2020, CBP released four documents in part and withheld 124 pages pursuant to FOIA Exemptions 6, 7(A), 7(C) and 7(E). Dkt. #22 ("Exemption Decl."), ¶ 7. CBP later produced in part 5 of 19 pages, withholding the remaining pages pursuant to Exemptions 6, 7(C), and 7(E). *Id.* at ¶ 9. CBP initially applied Exemption 7(A) to withhold certain documents due to an ongoing investigation; however, this investigation ended. Accordingly, on June 18, 2020, CBP produced 147 pages with exemptions applied and duplicate documents redacted. *Id.* at ¶¶ 11-12. Portions of the pages were withheld pursuant to Exemptions 5, 6, 7(C), and 7(E). *Id.* at ¶ 15. These exemptions are discussed in further detail below.

Having produced these documents, Defendants move to dismiss this action. Dkt. #20-1. Plaintiff CAIR moves the Court to order Defendants to:

> …conduct an adequate search, including by searching the emails of at least (1) Adele Fasano, (2) the Seattle Field Office Assistant Director, (3) Randy Howe, and (4) the Senior Official Performing the Duties of the Commissioner of Customs and Border Protection, Mark A. Morgan. Defendants must also eliminate the redactions of names and emails in the responsive materials for Assistant Directors and Port Directors within the Seattle Field Office [and] ….provide unredacted copies of the responsive documents to Plaintiff, and specifically, any related directive or instructions that Plaintiff has requested, along with any responsive documents from DHS or CBP Headquarters relating to that directive or instructions.

Dkt. #23-1.

ORDER RE: SUMMARY JUDGMENT - 3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.    DISCUSSION

**A.  Legal Standard**

In FOIA cases, the usual summary judgment standards apply and "if there are genuine issues of material fact in a FOIA case, the district court should proceed to a bench trial or adversary hearing" and issue findings of fact and conclusions of law.  *Animal Legal Def. Fund*, 836 F.3d at 990 (citing Fed. R. Civ. P. 52(a)(1)); *see also Cameranesi v. United States DOD*, 856 F.3d 626, 636 (9th Cir. 2017) ("We have now overruled this FOIA-specific summary judgment standard, and instead apply our usual summary judgment standard.").

Accordingly, summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248.  In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004).  The Court must draw all reasonable inferences in favor of the non-moving party. *See O'Melveny & Meyers*, 969 F.2d at 747, *rev'd on other grounds*, 512 U.S. 79 (1994).  However, the nonmoving party must make a "sufficient showing on an essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

ORDER RE: SUMMARY JUDGMENT - 4

FOIA establishes "a judicially enforceable right to secure [government] information from possibly unwilling official hands." *Dep't of Air Force v. Rose*, 425 U.S. 352, 361, 96 S. Ct. 1592, 48 L. Ed. 2d 11 (1976) (citing S. Rep. No. 813, 89th Cong. (1st Sess. 1965)); *see also Lahr v. NTSB*, 569 F.3d 964, 973 (9th Cir. 2009). The aim of these disclosure requirements is to "ensure an informed citizenry, vital to the functioning of democratic society, needed to check against corruption and to hold the governors accountable to the governed." *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242, 98 S. Ct. 2311, 57 L. Ed. 2d 159 (1978); *see also Hamdan v. United States DOJ*, 797 F.3d 759, 770 (9th Cir. 2015); *Shannahan v. I.R.S.*, 672 F.3d 1142, 1148 (9th Cir. 2012).

Federal agencies have a duty to construe FOIA requests liberally. *Yagman v. Pompeo*, 868 F.3d 1075, 1080 (9th Cir. 2017). Upon receipt of a FOIA request, a federal agency "shall make the records promptly available," 5 U.S.C. § 552(a)(3)(A), and "shall make reasonable efforts to search for the records" responsive to a request. *Id.* § 552(a)(3)(C)–(D). Agencies must respond to FOIA requests within twenty business days of receipt, *id.* § 552(a)(6)(A)(i), and disclose responsive documents unless one or more of FOIA's exemptions apply. These exemptions are "narrowly construed." *Shannahan*, 672 F.3d at 1149. An agency bears the burden of establishing that an exemption applies. *Lahr*, 569 F.3d at 973. "Any reasonably segregable portion of a record shall be provided" to the FOIA requester. 5 U.S.C. § 552(b).

**B. Timeliness of FOIA Responses**

CAIR asserts that CBP failed to respond to its request within 20 days as required by FOIA. Dkt. #15 ("Am. Compl."), ¶¶ 40-45. Defendants do not deny that CBP failed to meet the 20-day deadline, but argue that "many federal courts have held that untimeliness is not an automatic basis for violation of FOIA for purposes of summary or declaratory judgment," Dkt.

#20 at 21 (citing cases), and that "CAIR has already received its relief or CBP's delayed response through this litigation," *id.* at 22.  CBP cites to *Cmty. Ass'n for Restoration of the Env't. v. U.S. Env't Prot. Agency*, 36 F. Supp. 3d 1039, 1047-1054 (E.D. Wash. 2014), which discussed the difference between late responses and "egregiously late" responses, itself citing to *Oregon Natural Desert Ass'n v. Gutierrez*, 409 F. Supp. 2d 1237, 1248 (D. Or. 2006) where a delay of eight months was found to itself be an actionable violation of FOIA, "regardless of the final outcome of the request."

The Court finds that the delay in this case is analogous to the cases cites by Defendants and not as egregious as the delay in *Oregon Natural Desert Association*.  In any event, it is not clear what relief is being requested by CAIR other than what is requested for Defendants' other FOIA violations.  The Court will therefore proceed to analyze the remainder of CAIR's claims.

## C. Adequacy of the Search

"FOIA requires an agency responding to a request to 'demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents.'" *Lahr*, 569 F.3d at 986 (9th Cir. 2009) (quoting *Zemansky v. EPA*, 767 F.2d 569, 571 (9th Cir. 1985)).  This showing may be made by "reasonably detailed, nonconclusory affidavits submitted in good faith."  *Id*. Affidavits submitted by an agency to demonstrate the adequacy of its response are presumed to be in good faith. *Grand Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771, 224 U.S. App. D.C. 1 (D.C.C. 1981).  However, FOIA places the burden "expressly . . . 'on the agency to sustain its action.'"  *U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press*, 489 U.S. 749, 755 (1989).  In evaluating the adequacy of the search, the issue "is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those

documents was adequate." *Lahr*, 569 F.3d at 987.  "[T]he failure to produce or identify a few isolated documents cannot by itself prove the searches inadequate." *Id.* at 988.

*Lahr* makes clear that a search is not inadequate for failure to turn up a single document, *see id.* at 987 (citing *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315, 354 U.S. App. D.C. 230 (D.C. Cir. 2003)).  However, "it may be the case that 'if a review of the record raises substantial doubt, particularly in view of well-defined requests and positive indications of overlooked materials, summary judgment is inappropriate." *Hamdan v. United States DOJ*, 797 F.3d 759, 771, 2015 (quoting *Iturralde*, 315 F.3d at 314).

Here, CAIR argues that CBP's search was inadequate because they searched only the Office of Field Operations and not other component offices, and because "CBP decided to search only the emails of "[t]hree [Seattle Field Office (SFO)] managers in the Border Security Division."  Dkt. #23 at 11 (citing Dkt. #21 at ¶ 24).  The Court notes that a very similar approach to searching was found to be unreasonable as a matter of law by this Court in *Davis Wright Tremaine LLP v. U.S. CBP*, No. C19-334 RSM, 2020 WL 3258001 (W.D. Wash. June 16, 2020)).

CAIR points to Defendants' failure to search the emails of individuals "above the manager level." *Id.*  CAIR then argues that an agency "cannot ignore 'clear leads . . . [that] may indicate . . . other offices that should have been searched." *Id.* at 10 (citing *Anguiano v. U.S. Immigration & Customs Enf't,* No. 18-CV-01782-JSC, 2018 WL 5923451, at *5 (N.D. Cal. Nov. 13, 2018) (alterations in original) (emphasis omitted) (quoting *Rollins v. U.S. Dep't of State*, 70 F. Supp. 3d 546, 550 (D.D.C. 2014)). CAIR points to three "obvious additional leads" from the turned-over records. *Id.* at 11–13.  First, CAIR points to records indicating that the SFO Director at the time, Adele Fasano, "was likely the most critical player in implementing

SFO's response" and would have responsive documents in her email records if they were searched. *Id.* at 12. Second, CAIR argues that the SFO Assistant Director's emails should similarly be searched. Third, CAIR argues that "high-level CBP and DHS officers played a role in crafting CBP's response to a U.S. air strike targeting Iranian general Soleimani and in addressing SFO's implementation of that response" but that Defendants have not searched the emails of any national level officials. *Id.* CAIR further singles out records from Randy Howe, who was the Executive Director of the Office of Field Operations at the time. CAIR maintains that "references [in the produced records] to the Assistant Director and Howe, and other communications from national officials are 'clear leads . . . [that] may indicate . . . other offices [or emails] that should have been searched.'" *Id.* at 13 (citing *Anguiano*, 2018 WL 5923451, at *5; *Davis Wright Tremaine LLP*, 2020 WL 3258001 at *6).

In Response, Defendants argue in a conclusory fashion that they followed their own judgment in selecting search custodians and that those custodians followed proper search procedures. Dkt. #25 at 3–5. Defendants do not adequately explain in briefing why they did not consider to pursue the "leads" listed by CAIR, or adequately explain why it would not be reasonable to search the email of Adele Fasano, the SFO Assistant Director, or to identify proper emails to search at CBP Headquarters. Indeed, Defendants have now agreed to search the emails of Adele Fasano, the SFO Assistant Director, and Randy Howe. *See* Dkt. #26 at ¶ 3. Given all of the above, the Court denies summary judgment for the Defendants on this issue and grants it for CAIR. Defendants' search was inadequate as a matter of law.

**D. FOIA Exemptions**

    **1. Exemption 5**

ORDER RE: SUMMARY JUDGMENT - 8

1
2
3

CBP partially withheld information on five documents under 5 USC § 552(b)(5) subject to the deliberative process privilege. These documents appear to discuss press inquiries about the January 4 and 5 incident.  *See* Maltese Decl. Ex. A at 129-47.

4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19

Under Exemption 5, an agency does not need to release "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5).  Exemption 5 "shields 'those documents, and only those documents, normally privileged in the civil discovery context.'"  *Carter v. U.S. Dep't of Commerce*, 307 F.3d 1084, 1088 (9th Cir. 2002) (quoting *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975)).  Here, Defendants invoke the deliberative process privilege of Exemption 5. Dkt. #20 at 13.  "To qualify for exemption 5 under the 'deliberative process' privilege, a document must be both (1) 'predecisional' or 'antecedent to the adoption of agency policy' and (2) 'deliberative," meaning 'it must actually be related to the process by which policies are formulated.'"  *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1117 (9th Cir. 1988) (quoting *Jordan v. U.S. Dep't of Justice*, 591 F.2d 753, 774 (D.C. Cir. 1978)).  In short, the process protects "frank discussion of legal or policy matters" among agency employees.  *Sears, Roebuck & Co.*, 421 U.S. at 150 (citation omitted).

20
21
22
23
24
25
26
27

CAIR argues that courts have repeatedly refused to allow agencies to cite Exemption 5 to shield from disclosure discussions regarding a public-facing statement where that statement "does [not] appear to have been prepared in order to assist in the making of any decision."  Dkt. #23 at 15 (citing *First Resort, Inc. v. Herrera*, No. CV 11-5534 SBA (KAW), 2014 WL 988773, at *4 (N.D. Cal. Mar. 10, 2014); *Mayer, Brown, Rowe & Maw LLP v. IRS*, 537 F. Supp. 2d 128, 139 (D.D.C. 2008); *Chattler v. United States*, No. C–07–4040 MMC (EMC), 2009 WL 1313227, at * 2 (N.D. Cal. May 12, 2009)).

28

The Court finds that Defendants have failed to meet their burden to demonstrate Exemption 5 applies to these documents, which do not appear to have been prepared in order to assist in the making of a decision, and instead relate to the release of a public-facing statement describing events after a decision was made.   Accordingly, all documents and portions of documents withheld on the basis of this exemption must be turned over to CAIR.

### 2.  Exemption 6

Exemption 6 serves to protect personal privacy, permitting an agency to withhold "personnel and medical files and similar files the disclosure of which would clearly constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).  The term "similar files" is to be interpreted broadly, covering all "Government records on an individual which can be identified as applying to that individual." *U.S. Dep't of State v. Washington Post Co.*, 456 U.S. 595, 595, 602 (1982).  "Disclosures that would subject individuals to possible embarrassment, harassment, or the risk of mistreatment constitute nontrivial intrusions into privacy under Exemption 6." *Cameranesi v. United States Dep't of Def.*, 856 F.3d 626, 638 (9th Cir. 2017).

Defendants asserted Exemption 6 to redact the names, signatures, phone numbers, email addresses, and personally identifiable information of government employees and other third-party individuals.  Exemption Decl., ¶ 21.  However, Defendants released the names of what they determined to be high-ranking officials.  *Id.*

The Court has examined the records at issue and find that Defendants have redacted the names of government officials in records not relating to those individuals.  These are not personnel records or similar files.  Defendants make a valid argument that the release of the names of lower-level individuals could subject them to embarrassment or harassment, however CAIR has also demonstrated that the public interest lies in the release of the names of Assistant

ORDER RE: SUMMARY JUDGMENT - 10

Directors and Port Directors playing a key role in the implementation of the policy at issue, which touches on the civil rights of U.S. Citizens and legal permanent residents.  Accordingly, this exemption does not apply to the names of those individuals.  Other forms of personal information, including email addresses, are properly redacted.

### 3. Exemption 7

Exemption 7 protects from disclosure records or information compiled for law enforcement purposes, but only to the extent that the production of such records or information would result in one of six specified harms.  5 U.S.C. § 522(b)(7).  Defendants invoke two of these harms: (1) an unwanted invasion of personal privacy under 7(C); and (2) disclosure of law-enforcement techniques and procedures under 7(E).  Exemption 7(C) allows agencies to withhold information compiled for law enforcement purposes that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Under Exemption 7(E), agencies may withhold information "which would disclose techniques and procedures for law enforcement investigation or prosecutions . . . if such disclosure could reasonably be expected to risk circumvention of the law." 5 U.S.C. § 552(b)(7)(E).  The government must show that the technique or procedure at issue is not well known to the public, *see Rosenfeld v. U.S. Dep't of Justice*, 57 F.3d 803, 815 (9th Cir. 1995), and must describe the general nature of the technique or procedure at issue, although it need not provide specific details, *see Judicial Watch, Inc. v. U.S. Dep't of Commerce*, 337 F. Supp. 2d 146, 181 (D.D.C. 2004).

### i. Exemption 7(C)

The Court has already ruled that the public interest lies in the release of the names of Assistant Directors and Port Directors playing a key role in the implementation of the policy at

issue, which touches on the civil rights of U.S. Citizens and legal permanent residents. Accordingly, exemption 7(C) does not apply to the names of those individuals.

### ii. Exemption 7(E)

Defendants' application of exemption 7(E) is the most hotly disputed issue in this case. Defendants argue that they invoked Exemption 7(E) to withhold non-public information including law enforcement terminology, techniques, and procedures used to determine admissibility and other similar information that directly relates to CBP's law enforcement mission to protect the border, Exemption Decl. ¶¶ 28-29, Ex. 4, Vaughn Index, and that disclosure would allow persons seeking to enter the United States to alter their patterns of conduct to avoid detection, *see* Dkt. #20 at 20.

CAIR maintains that the *Vaughn* index provided by Defendants, where they provide a rationale for each redaction, is inadequate because:

> Defendants provide highly similar rationale each time they claim the exemption. In some instances, Defendants claim generally that the redacted information "reveals law enforcement techniques and procedures used during an enhanced security posture situation" or during a "possible high threat alert situation." *See, e.g.,* Dkt. 22-4 at 7-8, 10-11, 12-13, 15-16, 23. For other exemptions, the agency provides slightly more detail, explaining that the information might allow an individual to learn how CBP assesses "a person's admissibility" or how CBP decides when to make a "referral to secondary inspection." *See, e.g., id.* at 4-5, 11-12. But the agency offers nothing more. Such "'boilerplate' explanations for why whole categories of documents should be exempt" mean "that neither the adversary process nor the Court can perform its function." *ACLU of Washington v. U.S. Dep't of Justice*, No. C09-0642RSL, 2011 WL 887731, at *2 (W.D. Wash. Mar. 10, 2011)…

Dkt. #23 at 19–20.  CAIR requests the Court to order Defendants to supplement the *Vaughn* index with greater detail.

ORDER RE: SUMMARY JUDGMENT - 12

The Court agrees that Defendants have not "describe[d] the general nature of the technique or procedure at issue" and that more detail is clearly required under applicable case law. The Court will order Defendants to revisit their Vaughn index to describe in each instance the general nature of the technique or procedure at issue and to avoid boilerplate language.

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this subsection." 5 U.S.C. § 552(b). Defendants argue they have met this standard. CAIR argues that Defendants have cited 7(E) in redacting publicly known information and information to shield illegal activity from public disclosure. Dkt. #23 at 21.

The Court agrees with Defendants that "CAIR only speculates that the information is publicly known" and that CAIR "fails to cite to any specific redaction to show that the information is publicly known," instead relying "generalities." Dkt. 25 at 9–10. CAIR acknowledges it is speculating to a certain extent and requests *in camera* review. *See* Dkt. #23 at 24–25 (citing 5 U.S.C. § 552(a)(4)(B); *Islamic Shura Council of S. California v. FBI*, 635 F.3d 1160, 1165 (9th Cir. 2011)). Defendants do not object. Dkt. #25 at 11.

Defendants acknowledge but do not respond to CAIR's argument that 7(E) should not shield the disclosure records of illegal activity. *See* Dkt. #25 at 10. In its Cross-Motion, CAIR cites to *Wilkinson v. F.B.I.*, 633 F. Supp. 336, 349 (C.D. Cal. 1986) for the proposition that "[b]ecause the policy behind [Exemption 7(E)] is to shield effective and little-known law enforcement techniques from potential violators so that they may not be circumvented, Exemption 7(E) may not be used to withhold information regarding investigative techniques that are illegal or of questionable legality." Dkt. #23 at 24. CAIR also cites *Kuzma v. IRS*, 775 F.2d 66, 69 (2d Cir. 1985) ("[U]nauthorized or illegal investigative tactics may not be shielded

ORDER RE: SUMMARY JUDGMENT - 13

from the public by use of FOIA exemptions."). *Id.* On Reply, CAIR points out Defendants'

non-response and that "Defendants also do not contest that the agency engaged in unlawful

activity." As a result, release of the directive that mandated the detention of individuals based

on national origin may be appropriate, along with the release of any communications

discussing, implementing, criticizing, or withdrawing that directive. *In camera* review, not

opposed by Defendants, will aid the Court in assessing whether these redacted documents are

properly disclosed under FOIA.

## IV.   CONCLUSION

Having reviewed the briefing of the parties, the attached declarations and exhibits, and

the pleading, the Court hereby FINDS and ORDERS:

1. Defendants' Motion for Summary Judgment, Dkt. #20, is DENIED.

2. Plaintiff CAIR's Motion for Summary Judgment, Dkt. #23, is GRANTED IN PART
   as stated above.

3. Defendants are to conduct an adequate search. To extent they have not done so
   already, they must search the emails of (1) Adele Fasano, (2) the Seattle Field Office
   Assistant Director, (3) Randy Howe, and (4) the Senior Official Performing the
   Duties of the Commissioner of Customs and Border Protection, Mark A. Morgan.
   The parties are to meet and confer and to submit to the Court within the next **seven
   (7) days** a Joint Status Report on the production of any additional materials.

4. All documents and portions of documents withheld on the basis of Exemption 5
   must be turned over to CAIR or redactions removed, unless there is another valid
   exemption for withholding or redacting.

ORDER RE: SUMMARY JUDGMENT - 14

5.  Defendants must eliminate the redactions of the names of Assistant Directors and Port Directors within the Seattle Field Office in the produced materials.

6.  In all situations where Exemption 7(E) is cited, Defendants are to revisit their Vaughn index to adequately describe in each instance the general nature of the technique or procedure at issue and to avoid boilerplate language.

7.  Changes to redactions are to be accomplished in the next **30 days**. Any anticipated issues are to be included in the above Joint Status Report.

8.  Defendants must, within the next **seven (7) days**, submit to the Court for *in camera* review all records withheld or redacted on the basis of Exemption 7(E).  Portions of documents so redacted must be highlighted and labeled 7(E) for the Court's attention.  Defendants are to coordinate with the in-court deputy clerk assigned to this case as to the appropriate procedure for submitting these records.  A further order from the Court addressing these records will issue after the Court has had a chance to review.

DATED this 5th day of October, 2020.


RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER RE: SUMMARY JUDGMENT - 15